# UNITED STATED DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JOSHUA FIELDS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-986-G |
| | ) | |
| (1) GREAT LAKES INSURANCE SE, | ) | *Removed from the District Court of* |
| (2) MJ KELLY COMPANY, and | ) | *Kay County, State of Oklahoma* |
| (3) CAPSTONE ISG, | ) | *Case no. CJ-2021-00037* |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT GREAT LAKES INSURANCE SE'S
## MOTION TO EXCLUDE EXPERT TESTIMONY OF DERECK CASSADY
## AND RUSS DIDLAKE AND BRIEF IN SUPPORT

Sara E. Potts, OBA No. 32104
Emily Allan, OBA No. 33456
**DOERNER, SAUNDERS, DANIEL**
**& ANDERSON, L.L.P.**
210 Park Avenue, Suite 1200
Oklahoma City, OK  73102
Telephone 405.319.3507
Facsimile 405.319.3537
spotts@dsda.com
eallan@dsda.com

Michael Linscott, OBA No. 17266
**DOERNER, SAUNDERS, DANIEL**
**& ANDERSON, L.L.P.**
Two West Second Street, Suite 700
Tulsa, OK 74103
Telephone 918.582.1211
Facsimile 918.591.5361
mlinscott@dsda.com

September 1, 2022          *Attorneys for Great Lakes Insurance SE*

Defendant Great Lakes Insurance SE ("Great Lakes") moves to exclude all testimony of Plaintiff's real estate valuation expert, Russ Didlake ("Didlake"). Under the *Daubert* standard, Didlake's proposed testimony is irrelevant and unreliable, and, therefore, inadmissible. Great Lakes further moves to exclude any testimony of Dereck Cassady regarding his opinion(s) on the city code because it is unreliable and amounts to inadmissible legal conclusions.

## BACKGROUND

Plaintiff Joshua Fields ("Plaintiff") owned an eight-unit apartment building located at 410 W. Cleveland Avenue, in Ponca City, OK 74601 (the "Property"). From May 3, 2019, through May 3, 2020, the Property was insured under a Commercial Property Policy ("the Policy"), issued by Great Lakes Insurance SE ("Defendant," or "Great Lakes"). The terms of the Policy required Plaintiff to maintain, "as a condition" of insurance coverage, protective safeguards, including "[f]ully-functioning Smoke Detectors and Fire Extinguishers" throughout the property "as required by local code." The Policy further states that Great Lakes would not "pay for loss or damage caused by or resulting from fire," if Plaintiff "knew of any suspension or impairment in any protective safeguard" identified prior to the fire and failed to "notify [Great Lakes] of that fact" prior to the fire.

The Property was leased for occupancy until January 2020, when Plaintiff stopped renting out apartments at the Property and vacated the tenants, to begin remodeling work for the Property in February 2020. As part of that process, Plaintiff boarded up all the windows at the Property and had instructed his remodeling workers to remove the smoke detectors and fire extinguishers located within the Property. This action was never reported

to Great Lakes.

On March 24, 2020, a large fire occurred at the Property. Plaintiff filed a claim under the Policy and Great Lakes opened a claims investigation. After investigation, Great Lakes denied the claim, advising Plaintiff that because the condition requiring fire protective safeguards was not met, policy coverage was excluded for his fire loss claim. In March 2021, Plaintiff initiated his lawsuit against Great Lakes. The chief issue surrounding this case is the legitimacy of Great Lake's decision to deny Plaintiff's claim for lack of coverage due to the violation of the fire protective safeguards.

Plaintiff filed its Final List of Witnesses (Dkt. # 32) ("Witness List") on August 4, 2022. The Witness List included proposed testimony of Dereck Cassady and Russ Didlake. Specifically, Plaintiff described the proposed testimony for Cassady as "[m]ay testify to his *knowledge and opinions* on the city code requirements relevant to Plaintiff's building at the time of the fire." Dkt. # 32, at ¶ 8 (emphasis added). Cassady was also collectively listed as a fact witness and "[e]mployee of the Ponca City Fire Department", who responded to the fire and investigated its cause. *Id.* at ¶ 9. Cassady was not disclosed in Plaintiff's expert disclosures nor was any expert report provided by Cassady.

In naming Russ Didlake for the first time on his Witness List, Plaintiff described Didlake's proposed testimony as "[m]ay testify to his analysis/appraisal on building." Dkt. # 32, at  ¶ 13. Plaintiff further states it was "anticipated" that Didlake's testimony would "agree with Defendant's determination that the actual cash value, as defined by Defendant, for the covered property[,] exceeded the limits of insurance . . . ." *Id.* As with Cassady, Didlake was never identified in any required expert disclosures. Also, despite referring to

2

Didlake's "analysis/appraisal" in both his Witness List (Dkt. # 32) and Exhibit List (Dkt. # 31), Plaintiff did not produce any such document by the expert report deadline and or in any prior discovery, waiting until August 15, 2022, to produce a one-page, unsigned letter ostensibly from Didlake (dated June 24, 2022) following requests from Defendant's counsel. *Contrast* Dkts. # 31-32, *with* Didlake Letter, Ex. 1. In this one-page letter, Didlake apparently opines that:

> The local economy and the national market have gradually improved the landscape and value of property in and around Ponca City over the last 3 years.
>
> There are not many comps for subject property. My Market Opinion is based off comps available, location, assessed values and multi-family units.
>
> I have inspected subject property, reviewed leasing activity for subject property. I have also reviewed the valuation performed by Capstone ISG, Inc. on April 2nd, 2020. I concur that the ACV (actual cash value) is sufficient for subject property.

*See* Ex. 1.

Although they were not specifically designated as "expert witnesses" (and not identified in any required expert disclosures or pursuant to the Court's Scheduling Order), the proposed testimony described for each witness requires technical knowledge reserved for expert witnesses. The inclusion of these expert witnesses was inappropriate because the deadline (July 7, 2022) for providing names and reports of expert witnesses had already lapsed, making the inclusion of Dereck Cassady and Russ Didlake as experts, untimely. *See* Dkt. # 26. Furthermore, the proposed testimonies are irrelevant and unreliable, and should be excluded under the *Daubert* standard.

**ARGUMENT AND AUTHORITY**

Testimony by a qualified expert must be "both relevant and reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Relevant testimony must be a good "fit" for the case. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 519, 591 (1993). In other words, it must have sufficient bearing on the issues at hand to "advance[] the purpose of aiding the trier of fact" or otherwise resolve an issue in dispute. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005); Fed R. Evid. 702 (a). Reliable testimony, in turn, must be supported by "appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. An expert may testify only if their testimony is based upon solid facts; the testimony is the product of reliable principles and methods; and the witness has applied those principles and methods reliably. Fed R. Evid. 702; *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003).

Even if relevant and reliable, the risk of prejudice from "powerful [yet] quite misleading expert testimony is real." *Daubert*, 509 U.S. at 595. This Court therefore has broad authority to act as a gatekeeper and prevent confusing or prejudicial testimony. *Id.* Plaintiff has the burden of proving the admissibility of his experts' testimony by a preponderance of the evidence. *Bourjaily v. United States,* 483 U.S. 171, 175-76 (1987). Plaintiff does not meet his burden here.

I. **THE ADDITION OF PROPOSED EXPERT TESTIMONY FROM DERECK CASSADY AND RUSS DIDLAKE WAS UNTIMELY.**

Plaintiff violated this Court's Scheduling Order by including expert witnesses on Plaintiff's Final List of Witnesses beyond the deadline. "Where a district court established

4

a reasonable deadline for designating expert witnesses, '[the Tenth Circuit is] loath to interfere with the court's enforcement of that order. Adherence to such scheduling orders are critical in maintaining the integrity of judicial proceedings.'" *Henry v. U.S.*, 89 F.3d 850 (10th Cir 1996). In *Sims v. Great American Life Ins. Co.*, 469 F.3d 870 (10th Cir. 2006), the Tenth Circuit excluded an accident reconstruction expert which was not disclosed by the date set in the scheduling order. *Id.* at 895 ("Because Great American did not comply with the court's scheduling order, the district court properly excluded Great American's accident reconstruction expert as untimely disclosed.").

Plaintiff was similarly untimely in this case and failed to comport with the expert deadlines imposed by the Court. On January 15, 2022, this Court entered a Scheduling Order (Dkt. #26). The Scheduling Order imposed a deadline for "Plaintiff to file a final list of expert witness(es) in chief and submit expert reports to defendant by 07-20-22." *Id.* Plaintiff did not submit any witnesses (expert or otherwise) until he filed his Final List of Witnesses (Dkt. # 32) on August 4, 2022 and waited 11 days after filing his Exhibit List (Dkt. # 31) thereafter to produce Didlake's letter, Ex. 1 hereto, to Defendant, which was also nearly a month after Plaintiff's expert deadlines had elapsed. By including expert witnesses on Plaintiff's Final List of Witnesses, Plaintiff is attempting to circumvent this Court's deadlines in the Scheduling Order, as his expert witnesses and reports should have been submitted to the Court by July 20, 2022. They were not. Because Plaintiff did not comply with this Court's scheduling order, the expert testimony of Dereck Cassady and Russ Didlake should be excluded.

## II. THE OPINIONS OF PLAINTIFF'S PROFFERED EXPERTS ARE UNRELIABLE AND LACK THE 'INTELLECTUAL RIGOR' REQUIRED FOR ADMISSIBILITY UNDER *DAUBERT/KUMHO.*

Rule 702 of the Federal Rules of Evidence requires that "the proffered evidence is both 'reliable' and 'relevant.'" *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1204 (10th Cir. 2002) (quoting *Daubert*, 509 U.S. at 589). To determine whether an expert's opinions are reliable, the Court must consider a number of non-exclusive factors including

> "(1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community."

*Id.* at 1205 (citing *Daubert*, 509 U.S. at 589-90). Even when an expert proffers testimony related to "unscientific" matters, and "[r]egardless of the specific factors at issue," the Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1205-06 (quoting *Kumho*, 526 U.S. at 152). The *Daubert* inquiry requires there to be a "specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute," in order for "testimony [to be] both reliable and relevant." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2005).

### A. Didlake's Proposed Opinion is Not Relevant.

Didlake's Proposed Opinion is neither reliable nor relevant under the *Daubert* standard. This case stems from a casualty claim for insurance benefits due to a fire at the Plaintiff's building. That claim was denied because Plaintiff did not follow the conditions

6

required for coverage—*i.e.*, at the time of the fire, there were no smoke detectors or fire extinguishers at the Property as required by the policy's terms. It is unclear how Didlake's proffered testimony concurring on "ACV" is relevant to the issues. *See* Ex. 1.

In his letter/report, Didlake concludes that "I concur that the ACV (actual cash value) is sufficient for subject property." Ex. 1. This case does not involve the valuation of the property; rather it involves whether coverage was applicable for the fire loss occurring to the insured property. A determination of coverage has nothing to do with the value of the property. Therefore, testimony regarding the value of the property is not relevant to the issues in this case. *Daubert* seeks to exclude such testimony which may be misleading or irrelevant to the issues at hand. 509 U.S. at 595. Because Didlake's proposed testimony is irrelevant, it will be unhelpful (as well as confusing) to the trier of fact, thereby failing the first prong of the *Daubert* test. *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1283 (W.D. Okla. 2018) (citing Fed. R. Civ. P. 702); *see also id.* (quoting *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) ("[T]he "touchstone" of admissibility under Rule 702 is helpfulness to the trier of fact.").

### B. Didlake's Proposed Opinion is Unreliable.

Didlake is unqualified to opine on insurance and building repair matters. The *Daubert/Kumho* standard requires the Court to first "determine if the expert's proffered testimony—whether it concerns scientific, technical, or other special knowledge—has 'a reliable basis in the knowledge and experience of his or her discipline.'" *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1232-33 (10th Cir. 2005) (quoting *Daubert,* 509 U.S. at 592). Didlake's experience does not qualify him to give the opinions to which he proposes to

testify. Although Plaintiff states that Didlake will be discussing his "appraisal," Didlake's unsigned, one-page report makes only one general conclusion: "I concur that the ACV (actual cash value) is sufficient for subject property." Ex. 1. Actual Cash Value, also called "ACV," is an insurance term which is given meaning by the Policy and the Oklahoma Insurance Code, and involves the cost of replacing a building. *Tyler v. Shelter Mut. Ins. Co.*, 2008 OK 9, ¶ 15, 184 P.3d 496, 500. Didlake has not provided proof of any experience relating to insurance or building repair. His unsigned report states that he is "a licensed real estate agent in the state of Oklahoma" and "a property manager for the Ponca City, Ok area" with "experience in property values and rental rates for the market." Ex. 1. None of this experience relates to insurance or building repair. In fact, knowing property values and rental rates are completely unrelated to the cost of rebuilding or replacing a building. Since he has no experience in the fields upon which he intends to testify, Didlake's proposed testimony wanders outside the "reasonable confines of his subject area," *Lippe*, 287 F. Supp. 3d at 1278 (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001), and he therefore unqualified to testify on the proposed subject matters. *Id.* at 1278-79.

"An expert's opinion must be based on facts that enable him to 'express a reasonably accurate conclusion as opposed to conjecture or speculation.'" *Lippe*, 287 F. Supp. 3d at 1283 (quoting *Beck's Office Furniture and Supplies, Inc. v. Haworth, Inc.*, 1996 WL 466673, at *7 (10th Cir. Aug. 16, 1996)). However, Didlake's unsigned, one-page report lacks any information regarding the expert's method, conclusions, or particular factual circumstances of the dispute. Didlake does not mention any sort of method in his report,

8

merely stating that his opinion is "based off comps available, location, assessed values and multi-family units." Ex. 1. There is no explanation of the method Didlake used to come to this opinion nor does Didlake's report describe how his conclusions "based off comps available, location, assessed values and multi-family units" are grounded in any scientific or technical facts. *Contrast* Ex. 1, with *Bitler*, 400 F.3d at 1233-35 (fire investigator's inspection and methodology, in light of relevant experience and knowledge in fire investigations, provided "sound" basis for his opinions on cause of fire); *cf. Hollander,* 289 F.3d at 1206 (quoting *Daubert*, 509 U.S. at 590-91) ("Under *Daubert*'s reliability prong, 'an inference or assertion must be derived by the scientific method and must be supported by appropriate validation—*i.e.* 'good grounds,' based on what is known.'") (citation marks omitted). There is simply <u>nothing</u> provided in the sparse statements of Didlake's letter to give any indication as to how he formed his opinions, or what facts and assumptions those opinions are based upon. *Bitler*, 400 F.3d at 1233 (citing *Daubert*, 509 U.S. at 595) (under the *Daubert/Kumho* test, the court's "focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions.").

At bottom, while "the *Daubert* factors may apply to 'skill- or experience-based observation' in addition to testimony based on 'scientific principles'", it is nevertheless true that the expert testimony still must satisfy Rule 702 in order to be admissible. *Ho v. Michelin N. Am., Inc.*, 520 Fed. App'x. 658, 663 (10th Cir. 2013) (unpublished) (quoting *Kumho*, 526 U.S. at 150-51) (internal quotation marks omitted). Didlake's unsigned report is devoid of any details as to what procedures were used to evaluate the property or what

9

documents were referenced in his evaluation. Since no explanation is given as to how he came to his one broad conclusion, "there is simply too great of an analytical gap" between Didlake's methodology and his opinions. *Hollander*, 289 F.3d at 1205 (quoting *General Electric v. Joiner*, 522 U.S. 136, 147 (1997)). When compared against the *Daubert/Kumho* standards for admissibility of expert testimony, Didlake and his opinions fail entirely. As such, Didlake's opinions cannot be considered reliable under the *Daubert/Kumho* standard and must be excluded. *Id.* (quoting *Daubert*, 509 U.S. at 592-93) ("Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'").

Moreover, Didlake's testimony could be considered unreliable *ipse dixit*. Expert opinions must have sufficient bases in facts and methods. They may not be unsupported, "trust me" assertions of opinion presented as facts on the authority of a single expert. If they are, then they may be "powerful and quite misleading" opinions that must be excluded. *Daubert,* 509 U.S. at 595. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 137 (1997). To Defendant's knowledge, Didlake has not based his expert opinion on any known standard, reasoning, method, publication, or authority other than his own say so. "[A]n expert, no matter how good his credentials, is not permitted to speculate." *Graves v. Mazda Motor Corp.*, 405 Fed. App'x. 296, 299 (10th Cir. 2010) (unpublished). Since Didlake's expert opinion is unreliable *ipse dixit*, his expert testimony should be excluded.

**C. Cassady's Proposed Opinion Testimony is Irrelevant and Unreliable.**

Dereck Cassady's proposed testimony is also irrelevant and unreliable under *Daubert* based on the same rules of law applied above. Plaintiff's proposed testimony of Dereck Cassady is stated as follows:

> "May testify to his knowledge and opinions on the city code requirements relevant to Plaintiff's building at the time of the fire. His involvement in providing information to persons handling and investigating the claim for benefits."

Dkt. # 32, at ¶ 8 Cassady has not produced an expert report or been previously identified as an expert in this case. The only information regarding Cassady's proposed testimony on this issue is contained in the quotation above. Plaintiff's brief explanation of Cassady's proposed testimony is insufficient because it does not present facts, methods, conclusions, or opinions in any way. Defendant presumes that Cassady's testimony will involve his opinion as to whether Plaintiff complied with the city code requirements in this case. Without such opinion, his only testimony will involve reading the code provisions to the jury. This is both unnecessary and unhelpful to the trier of fact, making expert testimony irrelevant on this subject.

Further, the generalized topic expressed by Plaintiff above does not incorporate information revealing to which codes Plaintiff is referring, what method is used to determine compliance, or if compliance was, in fact, achieved in Cassady's opinion. In short, Plaintiff has not provided enough information to establish the relevance or reliability of Cassady's testimony. Plaintiff has provided virtually no information at all. To Defendant's knowledge, Cassady has not based his expert opinion of Plaintiff's compliance

on any known standard, reasoning, method, publication, or authority other than his own say so. If his opinion is based on such information, it has not been properly disclosed to Defendant under the Federal Rules of Civil Procedure.[1] "[A]n expert, no matter how good his credentials, is not permitted to speculate." *Graves*, 405 Fed. App'x. at 299. Since Mr. Cassady's expert opinions regarding the city code requirements are irrelevant and unreliable, this testimony should be excluded.

### III. DERECK CASSADY'S PROPOSED TESTIMONY EQUATES TO LEGAL CONCLUSIONS.

Plaintiff's Witness List denotes that Cassady plans to "testify to his knowledge and opinions on the city code requirements relevant to Plaintiff's building at the time of the fire." This testimony ultimately equates to testimony on issues of law. The Tenth Circuit has held that "testimony on ultimate issues of law by [a] legal expert is inadmissible because it is detrimental to the trial process." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). Although a witness may testify to facts which may be couched in legal terms, "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Id.* at 810. Furthermore, "[t]his Court has cautioned against experts 'serving as a mere mouthpiece for the expression of

---

[1] The Federal Rules of Civil Procedure require that the disclosure of expert testimony, if not accompanied by an expert report, include a statement of the subject matter on which the witness is expected to testify and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26 (a)(2)(c). "[M]ere reference to unspecified testimony is insufficient under this standard." *Ingram v. Novartis Pharm. Corp.,* 82 Fed. R. Serv. 3d 1267 (W.D. Okla. 2012).

[one party's] version of events.'" *Lippe*, 287 F. Supp. 3d 1128.

This Court ruled that a witness presented inadmissible testimony constituting a legal conclusion where the proposed witness opined that the Defendant's use of deadly force violated the Fourth Amendment, finding "these opinions constitute legal conclusions and invade the jury's role in the determination of the issues to be decided." *Id.* at 1285. On the other hand, the Tenth Circuit allowed testimony of an IRS agent which expressed an opinion as to the proper tax consequences of a transaction. *U.S. v. Bedford,* 536 F.3d 1148, 1158 (10th Cir. 2008). The court noted, however, that the expert's opinion could not have embraced the ultimate question of whether the defendants did in fact intend to evade income taxes. *Id.* Here, having provided no expert report for Cassady upon which to rely, Defendant can only assume Cassady's proposed expert testimony in this case regarding his "opinions on the city code requirements" are inadmissible conclusions of law. It is expected that the proposed testimony will involve whether or not the Plaintiff's property was in compliance with the city code. This is an inadmissible legal conclusion. Just as the *Lippe* witness could not testify on whether Defendant violated the Fourth Amendment, 287 F. Supp. 3d at 1285, Mr. Cassady cannot opine as to whether Plaintiff complied with the city code. Therefore, his testimony is inadmissible and should be excluded.

## CONCLUSION

The proposed expert testimonies of Russ Didlake and Dereck Cassady were not filed timely to designate those individuals as Plaintiff's expert witnesses. More importantly, the proffered opinions lack any scientific or technical foundation or any specific methodology to satisfy the "intellectual rigor" required in order to be reliable under the *Daubert/Kumho*

standard. Without such foundation, the opinions offered are simply *ipse dixit*. The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert[.]" *Hollander*, 289 F.3d at 1205 (quoting *Joiner*, 522 U.S. at 147 ) (citation marks omitted). Because the proffered opinions are unreliable and do not assist the trier of fact, the Court should further deem the opinions of Russ Didlake and Dereck Cassady inadmissible in this case, pursuant to Fed. R. Evid. 702. As Didlake offers no testimony other than inadmissible "expert" testimony in this case, the Court should further strike Didlake from Plaintiff's Witness List.

> Respectfully submitted,
>
> /s/ Sara E. Potts
> Sara E. Potts, OBA No. 32104
> Emily Allan, OBA No. 33456
> **DOERNER, SAUNDERS, DANIEL**
> **& ANDERSON, L.L.P.**
> 210 Park Avenue, Suite 1200
> Oklahoma City, OK  73102
> Telephone 405.319.3507
> Facsimile 405.319.3537
> spotts@dsda.com
> eallan@dsda.com
>
> -and-
>
> Michael Linscott, OBA No. 17266
> **DOERNER, SAUNDERS, DANIEL**
> **& ANDERSON, L.L.P.**
> Two West Second Street, Suite 700
> Tulsa, OK 74103
> Telephone 918.582.1211
> Facsimile 918.591.5361
> mlinscott@dsda.com
>
> *Attorneys for Great Lakes Insurance SE*

## CERTIFICATE OF SERVICE

This certifies that on September 1, 2022, a true and correct copy of the foregoing document was served via the Court's electronic notification system to the following counsel of record:

Scott R. Jackson
Scott R. Jackson
Martin Jean & Jackson
P.O. Box 2403
Ponca City, Oklahoma 74602
sjackson@mjjlawfirm.com
***Attorneys for Plaintiff***

        */s/ Sara E. Potts*

1