## UNITED STATED DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JOSHUA FIELDS | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | Case No. CIV-21-986-G |
| | **)** | |
| (1) GREAT LAKES INSURANCE SE, | **)** | *Removed from the District Court of* |
| (2) MJ KELLY COMPANY, and | **)** | *Kay County, State of Oklahoma* |
| (3) CAPSTONE ISG, | **)** | *Case no. CJ-2021-00037* |
| | **)** | |
| Defendants. | **)** | |
| | **)** | |

---

## DEFENDANT GREAT LAKES INSURANCE SE'S
## MOTION FOR SUMMARY JUDGMENT

Respectfully submitted by:

**DOERNER, SAUNDERS, DANIEL**
**& ANDERSON, L.L.P.**
Sara E. Potts, OBA No. 32104
Emily Allan, OBA No. 33456
210 Park Avenue, Suite 1200
Oklahoma City, OK  73102
Telephone 405.319.3507
Facsimile 405.319.3537
spotts@dsda.com
eallan@dsda.com
-and-
Michael Linscott, OBA No. 17266
Two West Second Street, Suite 700
Tulsa, OK 74103
Telephone 918.582.1211
Facsimile 918.591.5361
mlinscott@dsda.com

September 1, 2022      *Attorneys for Great Lakes Insurance SE*

## TABLE OF CONTENTS

**Page**

**INTRODUCTION** …………………………………………………...   1

**STATEMENT OF UNDISPUTED MATERIAL FACTS**……………………   2

**BRIEF IN SUPPORT OF SUMMARY JUDGMENT**………………………..   15

**I.  THE COURT SHOULD GRANT SUMMARY JUDGMENT ON BOTH OF PLAINTIFF'S CLAIMS AGAINST GREAT LAKES**.…………………..   15

**II. THE POLICY CONDITIONS UNDER THE PROTECTIVE SAFEGUARDS ENDORSEMENT ARE CLEAR, UNAMBIGUOUS, AND CONSISTENT WITH OTHER POLICY TERMS**.…………………………..   16

  **A. THE PSE CLEARLY ESTABLISHES REQUIRED CONDITIONS PRECEDENT FOR FIRE LOSS COVERAGE AND UNEQUIVOCALLY STATES WHEN COVERAGE IS EXCLUDED.** …………………………………………………   17

    **1.  THERE ARE NO FACTS DEMONSTRATING THAT PLAINTIFF WAS ENTITLED TO COVERAGE FOR HIS FIRE LOSS CLAIM.** ………………   18

    **2.  THE UNDISPUTED FACTS SHOW THAT PLAINTIFF'S CLAIM WAS PROPERLY EXCLUDED UNDER THE UNAMBIGUOUS TERMS OF THE PSE.** ………………………………………………………………..   21

**III. THE LACK OF COVERAGE AND PLAINTIFF'S FAILURE TO SATISFY THE CONDITIONS PRECEDENT FOR COVERAGE IS FATAL TO BOTH OF HIS CLAIMS**.………………………………………...   24

  **A. PLAINTIFF CANNOT DEMONSTRATE A CRITICAL ELEMENT OF HIS BREACH OF CONTRACT CLAIM**…………………………………………   24

  **B. AS GREAT LAKES PROPERLY DENIED COVERAGE, PLAINTIFF'S BAD FAITH CLAIM ALSO SUCCUMBS TO SUMMARY JUDGMENT**………………..   25

**CONCLUSION**………………………………………………………   29

# TABLE OF AUTHORITIES

**PAGE(S)**

**STATUTES/ORDINANCES**

36 O.S. § 3621 ................................................................................................ 17

36 O.S. § 102 .................................................................................................. 17

Ponca City Muni. Code § 10-1-1 (Ord. 6304, 2-14-2022) ................................... 5

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................... 16

*Berenato v. Seneca Speciality Ins. Co.*, 240 F. Supp. 3d 351
  (E.D. Pa. 2017) ...................................................................................... 22, 24

*Boggs v. Great N. Ins. Co.*, 659 F. Supp. 2d 1199 (N.D. Okla. 2009*)* ....... 19, 25

*Brock v. Prudential Ins. Co. of Am., Inc.*, 2017 WL 1147771
  (N.D. Okla. Mar. 27, 2017) .................................................................... 24, 25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................... 15, 16

*Clark v. Shelter Mut. Ins. Co.*, 2022 WL 2717618
  (N.D. Okla. July 13, 2022) ............................................................ 20, 26, 29

*Expertise, Inc. v. Aetna Finance Co.*, 810 F.2d 968 (10th Cir. 1987) ............... 26

*Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, 2020 WL 6386870
  (N.D. Okla. Oct. 30, 2020) .................................................................... 15, 16

*Gillogly v. General Elec. Capital Assur. Co.*, 430 F.3d 1284 (10th Cir. 2005) ...... 26

*Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*,
  142 S. Ct. 2779 (2022) ................................................................................ 19

*Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*,
21 F.4th 704 (10th Cir. 2021) ........................................................................ 19

*Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*,
499 F. Supp. 3d 1098 (W.D. Okla. 2020) ...................................................... 19

*Great Lakes Reinsurance (UK), PLC v. JDCA, LLC*, 2014 WL 6633039
(D. Conn. Nov. 21, 2014) ............................................................................... 22

*Hatch v. State Farm Fire & Cas. Co.*, 2020 WL 6163562
(W.D. Okla. Oct. 21, 2020) ............................................................................ 27

*Illinois Union Ins. Co. v. Grandview Palace Condominiums Ass'n*,
155 A.D.3d 459, 459–60 (2017) ............................................................... 22, 23

*Klintworth v. Valley Forge Ins. Co.*, 2022 WL 1021750
(10th Cir. Jan. 31, 2022) ................................................................................ 29

*Klintworth v. Valley Forge Ins. Co.*, 2021 WL 816730
(N.D. Okla. Mar. 3, 2021) .............................................................................. 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................... 15

*MJH Properties LLC v. Westchester Surplus Lines Ins. Co.*, 814 F. App'x 421
(10th Cir. 2020) .............................................................................................. 26

*Nat'l Fire & Marine Ins. Co. v. 3327 W. 47th Place, LLC*, 2017 WL 5499154
(N.D. Ill. Nov. 16, 2017) ................................................................................ 22

*New Hamilton Liquor Store, Inc. v. AmGuard Ins. Co.*, 2021 WL 5974158
(6th Cir. Dec. 16, 2021) .................................................................................. 22

*New Hamilton Liquor Store, Inc. v. AmGuard Ins. Co.*, 474 F. Supp. 3d 922
(E.D. Mich. 2020) ............................................................................... 22, 23, 25

*Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243 (10th Cir. 2010) ............................... 27

*Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431 (10th Cir. 1993) .......................... 27, 29

*Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291(10th Cir. 2000) .......... 18, 21

*Savant Homes, Inc. v. Collins*, 809 F.3d 1133 (10th Cir. 2016) ....................................... 15

*Schwartz & Schwartz of Virginia, LLC v. Certain Underwriters at Lloyd's, London who Subscribed to Pol'y No. NC959*, 677 F. Supp. 2d 890 (W.D. Va. 2009) ............... 22, 23

*Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*, 556 F. App'x 356 (5th Cir. 2014) .................................................................................................. 22, 23

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) ............................ 27

*State Farm Fire & Cas. Co. v. Pettigrew*, 180 F. Supp. 3d 925 (N.D. Okla. 2016) ............................................................................................ 20, 21, 22

*Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240 (10th Cir. 2006) ................................................................................................... 15

*Thames v. Evanston Ins. Co.,* 665 F. App'x 716 (10th Cir. 2016) ................................... 17

*Thames v. Evanston Ins. Co.*, 2015 WL 7272214 (N.D. Okla. Nov. 17, 2015) ..................................................................... 17, 19, 20, 24

*Till Metro Ent. v. Covington Specialty Ins. Co.*, 545 F. Supp. 3d 1153 (N.D. Okla. 2021) ............................................................................................ 23, 26

*Totally Tickets v. Sentinel Ins. Co., Ltd.*, 549 F. Supp. 3d 1309 (W.D. Okla. 2021) ............................................................................................. 18, 21

*United States Liab. Ins. Co. v. Paul*, 2020 WL 7647013 (N.D. Okla. Dec. 11, 2020) .......................................................................................... 25

*Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153 (N.D. Okla. 2018) ................... 18

*Vineland 820 N. Main Rd., LLC v. United States Liab. Ins. Co*., 2018 WL 4693965
(D.N.J. Sept. 29, 2018) ............................................................................... 22, 23

## STATE CASES

*Am. Iron & Mach. Works Co. v. Ins. Co. of N. Am*., 1962 OK 197, 375 P.2d 873 .......... 24

*Badillo v. Mid Century Ins. Co*., 2005 OK 48, 121 P.3d 1080 ......................................... 28

*Ball v. Wilshire Ins. Co*., 2009 OK 38, 221 P.3d 717 ..................................................... 28

*Beers v. Hillory*, 2010 OK CIV APP 99, 241 P.3d 285 ............................................... 28, 29

*Bituminous Cas. Corp. v. Cowen Const., Inc.*, 2002 OK 34, 55 P.3d 1030 ............... 17, 19

*Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312 ............................................................ 25

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 2005 OK 65, 148 P.3d 832 ............... 23

*Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105 ........................................... 29

*Davis v. GHS Health Maint. Org., Inc*., 2001 OK 3, 22 P.3d 1204 ................................. 26

*Digital Design Grp., Inc. v. Info. Builders, Inc*., 2001 OK 21, 24 P.3d 834 .................... 25

*Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372 ...................................... 16, 17, 21

*Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*
2015 OK CIV APP 100, 363 P.3d 1270 ........................................................................ 25

*Max True Plastering Co. v. U.S. Fid. & Guar. Co.*
1996 OK 28, 912 P.2d 861 .......................................................................................... 20

*Nat'l Fire Ins. Co. v. McCoy*, 1951 OK 379, 239 P.2d 428 ............................................. 18

*Newport v. USAA*, 2000 OK 59, 11 P.3d 190 .................................................................. 28

*Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*
   2019 OK 3, 457 P.3d 997 ................................................................................ 17

*Silver v. Slusher*, 1988 OK 53, 770 P.2d 878 ................................................... 26

*Wynn v. Avemco Ins. Co.*, 1998 OK 75, 963 P.2d 572 ...................................... 19

## FEDERAL RULES

Fed. R. Civ. P. 56 .......................................................................................... 15, 16

**INTRODUCTION**

Plaintiff Joshua Fields ("Plaintiff") owned an eight-unit apartment building located at 410 W. Cleveland Avenue, in Ponca City, OK 74601 (the "Property"). For several years prior to the time in question, smoke detectors and fire extinguishers were installed and working throughout the Property and Plaintiff rented out the Property to various tenants. In 2019, Defendant Great Lakes Insurance SE ("Great Lakes") issued a Commercial Lines Policy (the "Policy") to Plaintiff, providing, *inter alia*, casualty coverage for the Property and imposing certain exclusions as well as conditions for coverage. The Policy contained a Protective Safeguard Endorsement ("PSE") which imposed exclusions and conditions for fire loss coverage mandating smoke detectors and fire extinguishers be installed and maintained at the Property. The PSE also states that Great Lakes would not "pay for loss or damage caused by or resulting from fire," under either of two circumstances: (1) if Plaintiff "knew of any suspension or impairment in any protective safeguard" identified in the PSE Schedule prior to the fire and failed to "notify [Great Lakes] of that fact" prior to the fire; or (2) if prior to the fire, Plaintiff had "failed to maintain any protective safeguard" identified in the PSE, "over which [he] had control, in complete working order." Plaintiff acknowledged receiving a copy of the Policy at the time of purchase but further admitted he did not read it. Subsequently, in February 2020, Plaintiff vacated the remaining tenants at the Property to begin initial steps towards remodeling the Property. During this time, Plaintiff "directed" his maintenance man, Keith Crawford, to remove all of the smoke detectors and fire extinguishers from the Property, despite the PSE requirements and without providing notice to Great Lakes that he had done so.

On March 24, 2020, a large fire occurred at the Property causing significant damage throughout the building. First responders attending the scene observed that no smoke detectors or fire extinguishers were present inside the Property. Following notice of Plaintiff's loss claim related to the fire, Great Lakes initiated its claim investigation, which included numerous witness interviews, inspections, forensic evaluations, and an Examination Under Oath ("EUO") taken of Plaintiff, during which Plaintiff admitted to removing the fire extinguishers and smoke detectors prior to the fire. Due to the facts and circumstances discovered during the claim investigation, Great Lakes determined that the protective safeguard conditions under the PSE had not been met and denied coverage on Plaintiff's fire loss claim. Plaintiff then served the lawsuit on Great Lakes that he had earlier filed to avoid the one-year statute of limitations for fire losses, alleging that Great Lakes' denial of coverage was a breach of the Policy terms and a breach of Great Lakes' duty of good faith owed to him under the Policy. As demonstrated below in the Undisputed Material Facts ("UMF") below, neither of Plaintiff's claims should survive summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Plaintiff owned an eight-unit apartment building located at 410 W. Cleveland Avenue, in Ponca City, OK 74601 (the "Property"), acquiring full ownership of the Property sometime in 2011. J. Fields Examination Under Oath, Mar. 18, 2021 ("EUO"), Ex. 1, pp. 35-36. He has owned the Property in his personal capacity since that time. *Id.*

2.    In May 2015, a Limited Multi-Peril Survey was conducted for the Property. EUO, Ex. 1, pp. 7-9; *see also* 2015 Multi-Peril Survey, Ex. 2 (also attached as Ex. 1 to

EUO).

3.     As part of that 2015 Survey, it was recommended that

"[a] maintenance program should be implemented for the smoke detectors, with batteries tested on a monthly basis and the batteries being completely replaced every six months. Written documentation should be retained regarding testing and replacement."

2015 Survey, Ex. 2, p. 1. Plaintiff signed an acknowledgment of those recommendations, certifying that "all required recommendations . . . have been fully complied with as of [July 23, 2015]." *Id.*; *see also* EUO, Ex. 1, pp. 9, 15-16.

4.     Other than fire extinguishers and smoke detectors, there were no other types of fire protection devices located at the Property. EUO, Ex. 1, pp. 21, 39-40.

5.     The Property was managed by Keith Crawford ("Crawford") who worked for Plaintiff and lived at the Property. EUO, Ex. 1, pp. 18-19. Plaintiff testified that Crawford was under his direct supervision, and that Crawford took instructions directly from Plaintiff. *Id.*, at pp. 20, 22, 40-42.

6.     Crawford was the person Plaintiff directed to make sure there were working smoke detectors in the apartments and hallways of the Property and at the time of the 2015 Survey, there were smoke detectors inside the Property and that there were fire extinguishers located under the kitchen sinks for each apartment. EUO, Ex. 1, pp. 15, 20-21, 39-41.

7.     Plaintiff further testified that the apartment building had working fire extinguishers and smoke detectors prior to February 2020. EUO, Ex. 1, pp. 22-25.

8.     From May 3, 2019, through May 3, 2020, the Property was insured under a

Commercial Lines Policy, Policy No. BC003908 (Renewal of Policy BC002578) (the "Policy"), which was issued by Great Lakes. *See* Ex. 3. The Policy includes Commercial Property coverage provisions. *See* Policy - Declarations Page, Ex. 3.

9.      Plaintiff admitted that he received a copy of the Policy from his local agent, Kevin Randall, and that he did not ask any questions about the coverage terms when he received the Policy. EUO, Ex. 1, pp. 32-33. Plaintiff also admitted that he never read his policy prior to making the loss claim underlying this lawsuit. *Id.* at p. 32 (stating, "[i]f you're asking if I read the policy [when it was purchased], no.").

10.     Following the declarations page, the Policy provides a Notice to the Policyholder, advising that "[t]he proposed contract includes certain conditions and/or warranties", and requesting the Policyholder to "[k]indly review" all portions of the Policy, "including any binder, declarations page, policy forms, and endorsements, to familiarize yourself with any conditions and/or warranties included in the contract of insurance  . . . [which] may require you to take specific actions, to refrain from taking specific actions, to fulfill certain requirements, and/or to verify specific facts." Notice to Policyholder, Ex. 4; *see also* Policy, Ex. 3 (Form GLK 3003 IL 01 19).

11.     The Notice also separately states:

> Please be advised that **strict compliance with the conditions and/or warranties contained in the contract of insurance is required**. **If you do not strictly comply with the conditions and/or warranties contained within the contract of insurance**, then the insurer, Great Lakes Insurance SE, **may deny or limit** coverage for any claim submitted by you under the contract of insurance.

Ex. 4 (emphasis added).

4

12.     Included with the Policy was also Protective Safeguards Endorsement (the "PSE") containing the following Schedule:

## PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

| Prem.<br>No. | Bldg.<br>No. | Protective Safeguards<br>Symbols Applicable |
|---|---|---|
| ALL | ALL | P-9 |

**Describe any "P-9":** Fully-functioning Smoke Detectors and Fire Extinguishers as required by local code.

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

*See* Protective Safeguards Endorsement ("PSE"), Ex. 5; Policy, Ex. 3 (Form CP 04 11 10 12).

13.     The terms of the PSE required Plaintiff to maintain, "as a condition" of insurance coverage, the protective safeguards coded as "P-9," which required "[f]ully-functioning Smoke Detectors and Fire Extinguishers" throughout the property "as required by local code." PSE, Ex. 5, Sec. A (1)-(2).

14.     In 2016, the City of Ponca City adopted the 2015 Editions of the International Fire Code ("IFC"), International Residence Code ("IRC"), and International Building Code ("IBC"). *See, e.g.*, 2016 Construction Board Minutes, Ex. 6; Ponca City Adopted Codes and Ordinances, Ex. 7; *see also* Exs. 19-20, *infra.* These codes were in effect in Ponca City until 2022. Ponca City Muni. Code § 10-1-1 (Ord. 6304, 2-14-2022) (adopting 2018 Code

Editions); *see also* Ex. 7.

15.     Pursuant to the 2015 IBC, the Property is classified as "Residential Group R-2", which includes apartment houses, boarding houses, and other multi-dwelling buildings. 2015 IBC Code Sections, Ex. 8, Sec. 310.4.

16.     Pursuant to the 2015 IFC, dwellings classified as Group R-2 (including the Property at issue) must have "[s]ingle or multiple station smoke alarms" installed and maintained in several areas within each unit of the building. 2015 IFC Code Sections, Ex. 9, Sec. 907.2.11.2; *id.* at Sec. 1103.8.1 (stating "[e]xisting R occupancies shall be provided with single-station smoke alarms in accordance with [IFC Sec.] 907.2.11."); *id.* at Sec. 907.2.9 (for Group R-2 dwellings, "[s]ingle- and multiple-station smoke alarms shall be installed in accordance with [IFC Sec.] 907.2.11.").

17.     Specifically, IFC Section 907.2.11.2 requires that "***regardless of occupant load***," R-2 dwellings must maintain

> "single or multiple-station smoke alarms . . . at ***all*** of the following locations:
>
> 1. On the ceiling or wall outside each separate sleeping area in the immediate vicinity of bedrooms.
> 2. In each room used for sleeping purposes.
> 3. . . .  In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level."

Ex. 9 (emphasis added).

18.     Further, the IBC requires portable fire extinguishers in each unit of an R-2 dwelling (like the Property at issue) at multiple areas within each apartment unit, as well

as "in areas where flammable or combustible liquids are stored, used or dispensed" and "[o]n each floor of structures under construction . . . in accordance with [IFC] Section 3315.1[.]" Ex. 8, IBC Sec. 906.1; *see also* Ex. 9, IFC Sec. 3315.1 (requiring that "structures under construction, alteration or demolition" be maintained "with not less than one approved portable fire extinguisher . . . at each stairway on all floor levels where combustible materials have accumulated . . . .").

19.    Thus, in order to satisfy the conditions required under the PSE, Plaintiff was required to maintain both fire extinguishers and smoke alarms within the Property (and in each dwelling unit) in accordance with the applicable code provisions from the IFC and IBC, as listed above. *See* UMF Nos. 10-18, *supra*; PSE, Ex. 5, Sec. A.

20.    In addition, the PSE added exclusions to the Policy based upon the failure to satisfy the PSE conditions for coverage. *See* PSE, Ex. 5, Sec. B:

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

**1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

**2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

21.    The PSE states that Great Lakes would not "pay for loss or damage caused by or resulting from fire," under either of two circumstances: (1) if Plaintiff "knew of any suspension or impairment in any protective safeguard" identified in the PSE Schedule prior to the fire and failed to "notify [Great Lakes] of that fact" prior to the fire; *or* (2) if prior to

7

the fire, Plaintiff "failed to maintain any protective safeguard" identified in the PSE, "over which [he] had control, in complete working order."  Ex. 5, Sec. B.

22.     The Property was leased for occupancy until January 2020, when Plaintiff stopped renting out apartments at the Property and vacated the tenants, to begin remodeling work for the Property in February 2020. EUO, Ex. 1, pp. 22-25. In that process, Plaintiff boarded up all the windows at the Property and instructed his remodeling workers to remove the smoke detectors and fire extinguishers located within the Property, *id.* at pp. 22-25, specifically instructing his maintenance man, "Keith [Crawford,] to remove them" prior to starting the remodeling work. *Id.* p. 22.

23.     On March 24, 2020, a large fire occurred at the Property, requiring Ponca City Police and Fire Departments to respond, and causing significant damage to the Property. Loss Claim Notice, Ex. 10; EUO, Ex. 1, pp. 26-27. Once the fire was extinguished, Ponca City Police and fire investigators searched the Property and determined "the origin of the fire was under stairwell" in the building's lower-level hallway. PCPD Narrative (Det. Sgt. Dye), Ex. 11.

24.     Responding officers, including PCPD Detective Sgt. Dye, observed that there were no smoke alarms or fire extinguishers present inside the Property at the time of the fire or during later inspections after the fire was put out. PCPD Narrative (Det. Sgt. Dye), Ex. 11; PCFD Incident Report, Ex. 12 (marking "none present" for presence of smoke detectors); EUO, Ex. 1, pp. 41-42. Plaintiff testified that Detective Dye was "probably correct" about seeing no smoke detectors and fire extinguishers inside the Property after the fire, as those devices had been removed in February 2020. *See* EUO, Ex.

1, at p. 42:

```
10        Q.   Okay.  Mr. Dye indicated that he did not
11   observe -- if he indicated that he did not observe any
12   smoke alarms throughout the building or fire
13   extinguishers, would he be wrong, after the fire?
14   Right after the fire?
15        A.   I would say he is probably correct.
16        Q.   Okay.  Because they were all pulled out?
17        A.   Yes, sir.
18        Q.   Because of the remodel?
19        A.   Yes, sir.
```

25.    After the fire, Plaintiff tendered a loss claim related to Great Lakes. Loss Notice, Ex. 10; EUO, Ex. 1, p. 45. Plaintiff has also admitted that his only claims made to Great Lakes (and which underlie this lawsuit) relate to the property damage occurring from the March 2020 fire. EUO, Ex. 1, pp. 45-47; *see also* Pltf's Discovery Responses, Ex. 13 (Resps. to Interrog. No. 5 and Req. for Production No. 13).

26.    Shortly thereafter, Great Lakes and its claims administrator, Bell & Clements, Ltd., initiated a claims investigation to investigate the fire loss. Great Lakes engaged Capstone ISG to adjust the claim, and subsequently engaged Rimkus Consulting Group ("Rimkus") to perform a forensic inspection the Property and to conduct a compliance review of the applicable fire and building codes. *Cf.* Adjuster's First Report (Apr. 28, 2020), Ex. 14; Rimkus Report (Sep. 16, 2020), Ex. 15. Great Lakes also issued a Reservation of Rights (ROR) letter to Plaintiff, advising that "there may be a question regarding coverage concerning some or all of the damages" claimed from the March 2020,

due to developing facts observed during recent inspections, including the lack of smoke alarms and protective safeguards within the building at the time of fire. ROR Letter (Apr. 28, 2020), Ex. 16, pp. 1-4.

27.     Rimkus detailed its investigations, research and inspection findings in a Report of Findings dated September 16, 2020, which was provided to Great Lakes. Rimkus Report, Ex. 15.  Rimkus concluded that the "fire originated on the ground level in the center hallway below the stairwell" and that fire was possibly caused by the "ignition of combustible materials" near a "kerosene space heater" near the stairwell. *Id.* at 1. Rimkus further stated that during inspections, "[n]o single station or multiple-station smoke alarms were observed in the building" and that "[s]moke alarms were not present in the building when the fire occurred." *Id.* at 2; *see also id.* at 3, 5.

28.     Because the Property was believed to have been built in 1954, "[n]o codes required installation of smoke alarms at the time the building was constructed." Rimkus Report, Ex. 15, at 6. However, Plaintiff testified about being "pretty adamant about keeping smoke detectors within the building", EUO, Ex. 1, p. 15, and there *were* working smoke alarms and extinguishers throughout the Property in 2015 and before February 2020.  EUO, Ex.1, pp. 15, 22-25, 40; *cf.* 2015 Survey, Ex. 2.

29.     There were working smoke alarms and fire extinguishers inside the Property prior to February 2020, before Plaintiff "instructed Keith [Crawford] to remove them . . . [w]hen we started gutting – or cleaning out the building to start remodel." EUO, Ex. 1, p. 22; *see also id.*, at pp. 15-18, 39-40.

30.     Due to the circumstances regarding the fire, Great Lakes took multiple steps

to investigate the facts relating to the fire loss and policy coverage with respect to Plaintiff's claim. Independent adjusters and forensic engineers engaged by Great Lakes to conduct the claims investigation and adjust the claim spent significant time and effort to investigate the circumstances relating to the loss, including:

1)   Conducting multiple inspections of the Property, including forensic investigations by Rimkus;

2)   Interviewing several individuals affiliated with the first responders at the scene, including the Ponca City Police and Fire Departments;

3)   Interviewing the Fire Marshal, Derek Cassady, and reviewing applicable building and fire codes;

4)   Interviewing the PCPD detectives and police officers investigating the loss event for possible arson, including Det. Sgt. Dye and reviewing PCPD witness interview statements and reports;

5)   Interviewing Reliable Reports regarding the Multi-Peril Limited Survey conducted in 2015;

6)   Corresponding with Plaintiff and his counsel during the entire claims process; and,

7)   Conducting the Examination Under Oath (EUO) of Plaintiff on March 18, 2021.

*See, e.g.*, Adjuster's First Report, Ex. 14, pp. 5-7; Adjuster's Sixth Report (Sep. 24, 2020), Ex. 17, pp. 2-4; Adjuster's Sixteenth Report, Ex. 18, p. 2; Capstone Emails, Ex. 19; Rimkus Report, Ex. 15; EUO, Ex. 1; ROR Letter, Ex. 16; *cf.* Determination Letter, Ex. 20.

31.   During the entire claims process, Great Lakes and its agents apprised Plaintiff and his counsel of the circumstances and issues involved in the claims process. EUO, Ex. 1, pp. 28-31; May 14, 2020 Letter to Fields, Ex. 21; Emails with Plaintiff's Counsel (Apr.-May 2020), Ex. 22; Jun. 29, 2021 Letter to Fields, Ex. 23; *see also* Capstone

ISG Notes, Ex. 24.

32.    Plaintiff has admitted to removing the protective safeguards that were required under the PSE. EUO, Ex. 1, pp. 22, 31-32, and that at the time of the March 2020 fire, there no smoke detectors or fire extinguishers in the apartments or hallways "because [he had] directed Keith [Crawford] to remove them." *Id.* at p. 22.

33.    In interviews conducted during the claims investigation, the Fire Marshal Dereck Cassady confirmed that the Ponca City had adopted Code provisions of the IBC and IFC, and that the Property would be subject to the requirements of R-2 occupancy under the Code. Ex. 20, pp. 5-6. Even though Cassady stated he would not have enforced the Code against Plaintiff or the Property because "he knew the building was under remodel", *id.*, Plaintiff has also admitted that a condition for coverage under the Policy required him to maintain "fully-functioning Smoke detectors and Fire extinguishers as required by local code" at the Property. Pltf's Resp. to Requests for Admissions, Ex. 25 (Resp. to Req. No. 3); 2015 Survey, Ex. 2 (certification by Plaintiff).

34.    Plaintiff further admits that he was required to notify Great Lakes of "the removal or impairment of any Fire Protective Safeguards" for fire loss damage to be paid under the Policy. Ex. 25 (Resp. to Req. No. 4). However, Great Lakes has no record that Plaintiff provided notice that he removed the protective safeguards from the Property prior to the fire in March 2020. Determination Letter, Ex. 20, p. 5; *see also* Adjuster's Sixteenth Report, Ex. 18, p. 2 (Plaintiff's local agent, Kevin Randall informed adjusters that Plaintiff "had not advised [Randall's] agency that the smoke detectors were removed prior to the fire."). Plaintiff also has "no recollection" of providing said notice to Great Lakes or to

Randall. Ex. 25 (Resp. to Req. No. 5).

35.     Fire extinguishers and smoke detectors were required under local code to be installed and maintained on the Property at all times (even during remodel). PSE, Ex. 5, Sec. A; UMF Nos. 13-18. Because he removed the fire extinguishers and smoke detectors in February 2020, Plaintiff *did* know "of any suspension or impairment in any protective safeguard" at the Property yet he failed to "notify [Great Lakes] of that fact" prior to the fire; also, because those devices were removed from the Property prior to the fire, the protective safeguards were not "maintain[ed] in complete working order." PSE, Ex. 5, at Sec. B (1)-(2); UMF Nos. 13-18. As such, Plaintiff failed to satisfy the conditions-precedent for Policy coverage due to fire loss and the PSE's coverage exclusions were triggered. Notice, Ex. 4; PSE, Ex. 5; UMF Nos. 4-7, 9-10, 24, 28-29.

36.     On July 7, 2021, Great Lakes issued its determination of Plaintiff's claim from the March 2020 fire loss. Ex. 20. In that correspondence, Great Lakes identified the applicable provisions of the IBC and IFC for the protective safeguard provisions of the Policy and advised Plaintiff that "maintaining smoke detectors in the building according to the Code regardless of building occupancy was unambiguously required as a condition of your insurance coverage for loss due to fire." *Id.*, pp. 3-5. Great Lakes also noted while Plaintiff had testified that he had "directed a maintenance worker to remove the smoke detectors and fire extinguishers in February 2020", Plaintiff's local insurance agent "reported that he was never informed that [Plaintiff] removed the Fire Protective Safeguards prior to the fire" and that "Great Lakes likewise ha[d] no record of such a report" from Plaintiff or his local insurance agent. *Id.* at 5. Due to the circumstances and

known facts, and "under the unambiguous terms of the Policy coverages and exclusions", Great Lakes then advised that because the PSE conditions requiring fire protective safeguards was not met, policy coverage was excluded for his fire loss claim. *Id.*

37.     On March 22, 2021, Plaintiff initiated his lawsuit against Great Lakes but did not attempt service on Great Lakes for several months. Instead, Plaintiff served Great Lakes on or about September 16, 2021, after receiving the Determination Letter. *Compare* Ex. 20, *with* Pet. (Dkt. # 1-2); *see also* Ex. 24. Shortly after service on Great Lakes, the lawsuit was removed to this Court. *See* Notice of Removal (Dkt. # 1).[1]

38.     Plaintiff's cause of action against Great Lakes solely relates to the March 2020 fire loss claim and his claims involve breach of contract and breach of the insurer's duty of good faith for the denial of coverage on his fire loss claim. *See generally* Dkt. # 1-1, at ¶¶ 19-22; Pltf's Initial Disclosures, Ex. 2, p. 2. Specifically, Plaintiff asserts that Great Lakes "has applied an unreasonable and incorrect interpretation of its policy as it relates to the issue of whether or not, at the time of loss, Plaintiff was in compliance or violation of local fire code requirements regarding smoke detectors and fire extinguishers inside the building." Ex. 13 (Pltf's Answ. to Interrog. No. 9). Plaintiff also claims that Great Lakes "unreasonably performed its investigation of Plaintiff's claim" by allegedly spending "over one year and three months before determining coverage and notifying Plaintiff." *Id.*; *cf.* Pet., Dkt. # 1-2, at ¶¶ 19-22.

---

[1] Following removal, Plaintiff voluntarily dismissed 2 other defendants without prejudice. Dkts. # 21-22.

## BRIEF IN SUPPORT OF SUMMARY JUDGMENT

## I. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON BOTH OF PLAINTIFF'S CLAIMS AGAINST GREAT LAKES.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[,]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986), and the Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56 (c)). Once the preliminary burden is met, the nonmovant must then "do more than simply show that there is some metaphysical doubt as to the material facts", *Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, 2020 WL 6386870, at * 4 (N.D. Okla. Oct. 30, 2020) (quoting *Matsushita,* 475 U.S. at 586), and instead present "a showing sufficient to establish an inference of the existence of *each element essential to the case* with respect to which that party has the burden of proof[.]" *Terra Venture, Inc. v. JDN Real Estate Overland Park*, L.P., 443 F.3d 1240, 1243 (10th Cir. 2006) (emphasis added).

Although the movant "bears the initial burden of making a *prima facie* demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law[,]" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137–38 (10th Cir. 2016), that initial burden may be satisfied "by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." *Id.* However, the movant is

*not* required to provide evidentiary materials "*negating* the opponent's claim. On the contrary, Rule 56 (c) . . . suggests the absence of such a requirement." *Celotex*, 477 U.S. at 323 (emphasis in original). Further, while the Court should disregard all "[f]actual disputes that are irrelevant or unnecessary, . . . and determine whether there is a genuine issue for trial", *Garnett Rd.*, 2020 WL 6386870, at * 4 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 – 49 (1986)), summary judgment is appropriate where there is an absence of evidence to support an element of the non-movant's claim, as "there can be 'no genuine issue as to any material fact,'" *Celotex*, 477 U.S. at 322-323, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Such is the case here regarding Plaintiff's claims for breach of contract and bad faith against Great Lakes as there is a complete lack of evidence to support the necessary elements for Plaintiff's claims. *See* UMF Nos. 1-38, *supra*.

## II. THE POLICY CONDITIONS UNDER THE PROTECTIVE SAFEGUARDS ENDORSEMENT ARE CLEAR, UNAMBIGUOUS, AND CONSISTENT WITH OTHER POLICY TERMS.

Oklahoma law recognizes that insurance coverage, "as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson v. St. Paul Ins. Co.*, 1991 OK 24, 812 P.2d 372, 377. Moreover, because "an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase[,] . . . [t]he parties are [therefore] bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was

executed." *Id.* (quoting *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 2002 OK 34, ¶ 9, 55 P.3d 1030, 1033. Following Oklahoma's tenets of contract interpretation, insurance contracts are "read as a whole giving the language its ordinary and plain meaning", *Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 2019 OK 3, ¶ 22, 457 P.3d 997, 1005, and "should be construed according to the terms set out within the four corners of the document." *Thames v. Evanston Ins. Co.*, 2015 WL 7272214, at * 5 (N.D. Okla. Nov. 17, 2015), *aff'd*, 665 F. App'x 716 (10th Cir. 2016) (unpublished).

A.   **THE PSE CLEARLY ESTABLISHES REQUIRED CONDITIONS PRECEDENT FOR FIRE LOSS COVERAGE AND UNEQUIVOCALLY STATES WHEN COVERAGE IS EXCLUDED.**

The Policy terms governing coverage for Plaintiff's fire loss claim are "*are unambiguous and clear*, [so] the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." *Thames*, 2015 WL 7272214, at * 5 (quoting *Bituminous*, 55 P.3d at ¶ 9) (emphasis in original). The Notice contained in the Policy advised Plaintiff not only that were there "certain conditions and/or warranties" included in the policy terms, but also that "strict compliance with the conditions and/or warranties contained in the [Policy] is *required*." Ex. 4 (emphasis added); UMF Nos. 10-11. The Protective Safeguards Endorsement (PSE) is unmistakably identified in the declarations page, incorporated into the Policy's "Commercial Property Conditions", and adds the "Protective Safeguards" requirements listed in the Schedule as "a condition of this insurance." PSE, Ex. 5, Sec. A; *see also* Policy, Ex. 3 (Commercial Property Conditions – CP 00 90 07 88); *cf. Bituminous*, 55 P.3d at ¶ 9 (quoting 36 O.S. § 3621) ("Every insurance contract shall be construed according to the entirety of its terms

17

and conditions set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy."). Additionally, although Plaintiff admits he did not read the policy when he received it from his local agent, UMF No. 9, extant law recognizes that "an insurer owes no duty to explain a policy to an insured; rather an insured is chargeable with the knowledge of the terms and legal effect of his insurance policy." *Vickers v. Progressive N. Ins. Co.*, 353 F. Supp. 3d 1153, 1164 (N.D. Okla. 2018) (citing *Nat'l Fire Ins. Co. v. McCoy*, 1951 OK 379, 239 P.2d 428, 430).

### 1.   THERE ARE NO FACTS DEMONSTRATING THAT PLAINTIFF WAS ENTITLED TO COVERAGE FOR HIS FIRE LOSS CLAIM.

In this case, Plaintiff cannot meet his burden to demonstrate that coverage exists for his fire loss claim. *Totally Tickets v. Sentinel Ins. Co., Ltd.*, 549 F. Supp. 3d 1309, 1313–14 (W.D. Okla. 2021) (citing *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298) (10th Cir. 2000) ("The insured has the burden of showing that a covered loss occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy."). The PSE's Schedule listed the necessary protective safeguards as "Fully-functioning Smoke Detectors and Fire Extinguishers as **required** by local code", Ex. 5 (emphasis added), and there is no dispute that the "local code" applicable under the PSE are the provisions of the IBC and IFC adopted by the City of Ponca City. UMF Nos. 9-21, 32-35.

There can also no genuine dispute that the term, "required", as used in the PSE ("required by local code"), is akin to "compulsory," or "necessary to be done," as the term is defined under the dictionary. *See* Merriam-Webster, *https://www.merriam-*

*webster.com/dictionary/required*; *cf. Goodwill Indus. of Cent. Oklahoma, Inc. v. Philadelphia Indem. Ins. Co.*, 499 F. Supp. 3d 1098, 1102 (W.D. Okla. 2020), *aff'd,* 21 F.4th 704 (10th Cir. 2021), *cert. denied,* 142 S. Ct. 2779 (2022) (applying Oklahoma law and observing the "Oklahoma Supreme Court has relied on dictionary definitions to provide the common usage of terms[.]"). The term, "required", is also consistently used throughout the Policy in accordance with its "ordinary, plain meaning." *Bituminous*, 55 P.3d at ¶ 12; *compare id.*, *with* Notice, Ex. 4; PSE, Ex. 5; *see also* Policy, Ex. 3 (Building and Personal Property Coverage Form – CP 00 10 10 12), Sec. A (4)(e)(4)(a) (excluding additional coverage on "any costs due to an ordinance or law that . . . [y]ou were *required* to comply with before the loss . . . ." (emphasis added); Ex. 3, Sec. E (7)(d) (valuation cost of glass "at the cost of replacement with safety-glazing material if *required* by law.") (emphasis added); Ex. 3 (Commercial General Liability Coverage Form – CG 00 01 04 13), Supplementary Payments, Sec. 1(b) (payment for costs of bail bonds "*required* because of accidents or traffic law violations . . . .") (emphasis added). When looking to the "four corners" of the Policy, *Boggs v. Great N. Ins. Co*., 659 F. Supp. 2d 1199, 1205 (N.D. Okla. 2009), then, the phrase in the PSE Schedule, "as required by local code," is "unambiguous, clear and consistent" and should be "accepted in [its] ordinary sense," *id.*, to mean the protective safeguards mandated[2] for R-2 occupancy dwellings under the IFC

---

[2] The Court should reject any argument that the phrase, "required by local code" is ambiguous and might be interpreted to mean only those codes that would be actually enforced by a local authority. Such an argument attempts to create an ambiguity in the policy where none exists, "by 'using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision.'" *Thames*, 2015 WL 7272214, at * 5 (quoting *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 17, 963 P.2d 572, 575). As discussed

(as adopted by Ponca City) were required to be installed throughout the Property in order to satisfy the conditions for coverage. *Contrast* PSE, Ex. 5, *with State Farm Fire & Cas. Co. v. Pettigrew*, 180 F. Supp. 3d 925, 932 (N.D. Okla. 2016) ("A policy term will be considered ambiguous ***only*** if it can be interpreted as having two different meanings.") (emphasis added); *see also Thames*, 2015 WL 7272214, at * 5 (citing *Max True Plastering Co. v. U.S. Fid. & Guar. Co*., 1996 OK 28, 912 P.2d 861, 869).

There is also no genuine dispute here that the Property was subject to the R-2 occupancy code requirements, including those mandating fire extinguishers and smoke detectors throughout the Property "regardless of occupant load." UMF Nos. 9-21, 32-35. These smoke detectors and fire extinguishers were the exact same protective safeguards that Plaintiff installed and maintained throughout the Property for several years prior to the fire, including within the individual apartment units and common areas. Plaintiff had directed Keith Crawford to keep up the maintenance of those safeguard devices during Plaintiff's ownership of the Property, until the last tenants vacated the Premises in late January 2020. UMF Nos. 1-7, 22, 28-29, 32. Plaintiff admits he then "directed" Crawford to "pull out" those devices from the apartment units, hallways, and common spaces in February 2020. UMF Nos. 29, 32. The absence of the safeguards prior to the fire and Plaintiff's own admissions therefore "establish that, under Oklahoma law, Plaintiff's claims were not covered by the Policy." *Clark v. Shelter Mut. Ins. Co*., 2022 WL 2717618, at * 4 (N.D. Okla. July 13, 2022) (citing *Pettigrew*, 180 F. Supp. 3d at 931).

---

further *infra*, other courts have also rejected attempts to create ambiguity in similar PSE language.

## 2.    THE UNDISPUTED FACTS SHOW THAT PLAINTIFF'S CLAIM WAS PROPERLY EXCLUDED UNDER THE UNAMBIGUOUS TERMS OF THE PSE.

Even assuming *arguendo* that Plaintiff could meet his burden to demonstrate coverage exists (he cannot), the undisputed facts also show that Great Lakes properly denied his claim under the exclusions in Section B of the PSE. *Pettigrew*, 180 F. Supp. 3d at 931 (quoting *Pitman*, 217 F.3d at 1298) ("Once the insured establishes coverage, 'the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy' . . . [and] . . . summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy.") (internal citation omitted). These terms expressly state that Great Lakes "***will not pay for loss or damage caused by or resulting from fire***," Ex. 5, Sec. B (emphasis added), "if, prior to the fire," Plaintiff knew of a "suspension or impairment" of the protective safeguards at the Property and "failed to notify Great Lakes of that fact," ***or*** if Plaintiff "[f]ailed to maintain any protective safeguard . . . over which [he] had control, in complete working order." *Id.*; *compare id.*, *with Totally Tickets*, 549 F. Supp. 3d at 1314 ("An exclusion is a policy term eliminating coverage where it otherwise would have existed under the general declaration"). Sec B of the PSE also "unquestionably exclude[s] coverage" for damage caused by fire loss when the protective safeguard conditions are not met. *Dodson*, 812 P.2d at 378; *see also id.* at 377 ("The policy exclusions are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy."); *accord*, *Totally Tickets*, 549 F. Supp. 3d at 1313-14. Even

21

when viewed in the light most favorable to Plaintiff, *Pettigrew*, 180 F. Supp. 3d at 931, Sec. B of the PSE terms plainly identify the circumstances that preclude coverage for fire loss. Ex. 5.

While there is scant Oklahoma law regarding the interpretation of Protective Safeguard Endorsements, courts in other jurisdictions have found the conditions-precedent and exclusionary terms in PSEs, similar to the PSE in this case, to be unambiguous. *See, e.g.*, *Berenato v. Seneca Speciality Ins. Co*., 240 F. Supp. 3d 351, 354, 356-60 (E.D. Pa. 2017); *Great Lakes Reinsurance (UK), PLC v. JDCA, LLC,* 2014 WL 6633039, at * 9 (D. Conn. Nov. 21, 2014); *New Hamilton Liquor Store, Inc. v. AmGuard Ins. Co.*, 474 F. Supp. 3d 922, 924, 926-28 (E.D. Mich. 2020), *aff'd,* 2021 WL 5974158 (6th Cir. Dec. 16, 2021); *Schwartz & Schwartz of Virginia, LLC v. Certain Underwriters at Lloyd's, London who Subscribed to Pol'y No. NC959*, 677 F. Supp. 2d 890, 910 (W.D. Va. 2009); *Scottsdale Ins. Co. v. Logansport Gaming, L.L.C*., 556 F. App'x 356, 359–60 (5th Cir. 2014) (unpublished); *Illinois Union Ins. Co. v. Grandview Palace Condominiums Ass'n*, 155 A.D.3d 459, 459–60 (2017); *Vineland 820 N. Main Rd., LLC v. United States Liab. Ins. Co.*, 2018 WL 4693965, at * 5 (D.N.J. Sept. 29, 2018); *Nat'l Fire & Marine Ins. Co. v. 3327 W. 47th Place, LLC*, 2017 WL 5499154, at * 10 (N.D. Ill. Nov. 16, 2017) (citing cases).

As with prior cases examining comparable terms, the PSE here "explicitly" required that fire extinguishers and smoke alarms be installed and "maintained . . . in complete working order" at the Property as a "condition for coverage" on a fire loss. *Great Lakes Reinsurance (UK)*, 2014 WL 6633039, at * 9; UMF Nos. 9-13. While acknowledging those

protective safeguards existed at the Property before February 2020, Plaintiff has also admitted that he removed the protective safeguards from the Property prior to the fire, so there was a "suspension or impairment" in the protective safeguards known to Plaintiff at the time of the fire, of which Plaintiff did not notify Great Lakes prior to the loss. PSE, Ex. 5, Sec. B (1); UMF Nos. 29, 32-36.

It is also undeniable that the protective safeguards were under Plaintiff's control and yet were not maintained in "complete working order" prior to the fire – indeed, those safeguards did not even exist at the Property at the time of the March 2020 due to Plaintiff's removal of the smoke detectors and fire extinguishers in February 2020. PSE, Ex. 5, Sec. B (2); UMF Nos. 29, 32-36. The exclusionary language in Section B (2) establishes that "[a]s long as Plaintiff 'failed to maintain'" the protective safeguards required under the PSE Schedule, Great Lakes "retained the right not to cover loss stemming from the fire." *Vineland 820*, 2018 WL 4693965, at * 5; *see also id.* (insured's knowledge not required for PSE exclusion based upon "[f]ail[ure] to maintain any protective safeguard listed . . . over which you had control, in complete working order."); *cf. New Hamilton*, 474 F. Supp. 3d at 928. When reviewing the terms of the PSE in conjunction with the Policy as a whole and in the light most favorable to Plaintiff, the PSE is nevertheless "clear that failure to maintain [the required protective safeguard], or knowledge of its suspension or impairment, is grounds for excluding coverage in the event of a fire." *New Hamilton*, 474 F. Supp. 3d at 928; *cf. Till Metro Ent. v. Covington Specialty Ins. Co.*, 545 F. Supp. 3d 1153, 1159 (N.D. Okla. 2021) (quoting *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co*., 2005 OK 65, ¶ 6, 148 P.3d 832, 835–36) ("Oklahoma courts 'will not impose coverage where the policy

language clearly does not intend that a particular individual or risk should be covered,' and neither a 'split in authority over whether a certain term is ambiguous,' nor 'the fact that the parties disagree' alone is sufficient to establish an ambiguity."); UMF Nos. 8-21. In addition, "[t]here is also no evidence that [Great Lakes] led Plaintiff to believe that it would cover a fire-related loss in the absence" of those protective safeguards. *Berenato*, F. Supp. 3d at 360; *see* UMF Nos. 8-21, 32-35. Instead, it is "quite plain" that the PSE terms exclude payment for fire loss damage under the undisputed facts of this case. *Am. Iron & Mach. Works Co. v. Ins. Co. of N. Am.*, 1962 OK 197, 375 P.2d 873, 874; UMF Nos. 8-21, 32-35; *cf. Illinois Union*, 155 A.D.3d at 459; *Scottsdale Ins.*, 556 F. App'x at 359-60.

Here, not only did Plaintiff fail to satisfy the conditions precedent for coverage, but the unambiguous exclusionary terms of the PSE were triggered, and Great Lakes had "retained the right not to cover loss stemming from the fire." *Vineland 820*, 2018 WL 4693965, at * 5; UMF Nos. 8-21, 32-35.  As a result, Plaintiff's fire loss claim was properly denied. *Compare* UMF Nos. 32-36, *with Schwartz & Schwartz*, 677 F. Supp. 2d at 910; *Illinois Union*, 155 A.D.3d at 459; *Thames*, 2015 WL 7272214, at * 8. The Court should therefore find that no coverage existed on Plaintiff's fire loss claim as a matter of law.

## III.   THE LACK OF COVERAGE AND PLAINTIFF'S FAILURE TO SATISFY THE CONDITIONS PRECEDENT FOR COVERAGE IS FATAL TO BOTH OF HIS CLAIMS.

### A.   PLAINTIFF CANNOT DEMONSTRATE A CRITICAL ELEMENT OF HIS BREACH OF CONTRACT CLAIM.

Plaintiff "must prove the following in order to recover on his breach of contract claim: (1) formation of a contract, (2) breach of the contract, and (3) damages directly resulting from the breach." *Brock v. Prudential Ins. Co. of Am., Inc*., 2017 WL 1147771,

at * 3 (N.D. Okla. Mar. 27, 2017) (citing *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843). While there is an underlying contract between Plaintiff and Great Lakes (*i.e.*, the Policy, Ex. 3), there are no facts in this case establishing that Great Lakes breached the terms of the contract by denying coverage. Instead, Plaintiff has repeatedly admitted that he failed to satisfy the conditions for fire loss coverage under the PSE and that those same failures resulted in triggering the PSE's exclusions. *See* UMF Nos. 9, 22, 24, 29, 32-36; Sec. II, *supra*. The undisputed facts show that Plaintiff was "not in compliance with the PSE," *New Hamilton*, 474 F. Supp. 3d at 928, and thus Great Lakes "did not breach the parties' contract by denying coverage." *United States Liab. Ins. Co. v. Paul*, 2020 WL 7647013 (N.D. Okla. Dec. 11, 2020) (citing *Boggs*, 659 F. Supp. 2d at 1216). The Court should find that Great Lakes "has carried its burden on summary judgment to demonstrate no coverage under the [Policy]", and that there is no evidence "of a material fact" on this issue of coverage "that would justify the trial at issue." *Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*, 2015 OK CIV APP 100, ¶ 40, 363 P.3d 1270, 1278–79 (quoting *Bowers v. Wimberly*, 1997 OK 24, ¶ 13, 933 P.2d 312, 315). Accordingly, summary judgment is proper, as "Plaintiff[] cannot recover on [his] breach of contract claim." *New Hamilton*, 474 F. Supp. 3d at 928; *accord*, *Kentucky Bluegrass*, 363 P.3d at ¶ 40.

**B.    AS GREAT LAKES PROPERLY DENIED COVERAGE, PLAINTIFF'S BAD FAITH CLAIM ALSO SUCCUMBS TO SUMMARY JUDGMENT.**

Like his breach of contract claim, Plaintiff's tort claim premised on bad faith breach of contract likewise cannot withstand scrutiny under the summary judgment standard. In

Oklahoma, the relationship between insurer and insured is governed by principles of contract law and the terms of the policy contract. *Silver v. Slusher,* 1988 OK 53, 770 P.2d 878, 883 (citing 36 O.S. § 102). As such, there must be underlying liability owed to the insured on the contract to give rise to a claim for bad faith breach of an insurance contract. *Clark*, 2022 WL 2717618, at * 7 (quoting *Davis v. GHS Health Maint. Org., Inc*., 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210) ("[U]nder Oklahoma law, "***liability under the contract is a prerequisite to a recovery for bad faith breach of an insurance contract***.") (emphasis in original). Where the undisputed facts show, as in this case, that no coverage existed under the policy terms, no contractual liability is imposed against the insurer and the insured's bad faith claim fails as a matter of law. *Till Metro*, 545 F. Supp. 3d at 1166 (citing *Gillogly v. General Elec. Capital Assur. Co*., 430 F.3d 1284, 1293 (10th Cir. 2005)) ("Because [the insurer] is entitled to judgment as a matter of law as to coverage under the insurance contract, it is also entitled to judgment on [Plaintiff's] claim of bad faith breach of the insurance contract.").

As discussed, there is no factual dispute regarding Plaintiff's failure to adhere to the terms and conditions of the PSE or that Great Lakes properly denied Plaintiff's fire loss claim due to lack of coverage pursuant to those terms. These facts not only extinguish Plaintiff's breach of contract claim, but also show that Plaintiff cannot establish that coverage benefits were wrongfully withheld, "which is necessary to prevail on a bad faith claim." *MJH Properties LLC v. Westchester Surplus Lines Ins. Co.*, 814 F. App'x 421, 426 (10th Cir. 2020) (unpublished); *see also Clark*, 2022 WL 2717618, at * 7 (quoting *Expertise, Inc. v. Aetna Fin. Co*., 810 F.2d 968, 972 (10th Cir. 1987)) ("Because Plaintiff

26

has failed to establish a breach of contract against Defendant, the Court 'must also conclude that Plaintiff failed to establish a *prima facie* case of bad faith breach of contract.'").

Additionally, since "the insurance policy does not provide coverage" for this claim, Great Lakes also "had a reasonable basis for denying coverage and cannot reasonably be seen as acting in bad faith." *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1142–43 (10th Cir. 2004) (citing *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.1993)). The facts and evidence clearly establish that Plaintiff "had no right to [policy] benefits" for this fire loss claim and Great Lakes therefore did not "breach the policy" by denying his claim, *Hatch v. State Farm Fire & Cas. Co.*, 2020 WL 6163562, at * 4–5 (W.D. Okla. Oct. 21, 2020) (applying Oklahoma law), nor did Great Lakes "act unreasonably [by] . . . withhold[ing] payment based on a 'legitimate dispute' regarding coverage." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1249 (10th Cir. 2010) (quoting *Skinner v. John Deere Ins. Co.*, 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223). Due to the lack of policy coverage, "it necessarily follows that [Great Lakes'] denial of coverage was not unreasonable." *Hatch*, 2020 WL 6163562, at * 5 (citing *Oldenkamp*, 619 F.3d at 1249). At bottom, Great Lakes' denial of coverage on Plaintiff's fire loss claim "was well-supported by specific terms and exclusionary provisions of the Policy." *Clark*, 2022 WL 2717618, at * 7; *see also* UMF Nos. 8-21, 32-36.

Nor can Plaintiff's "unreasonable delay" claim survive summary judgment under the accepted facts of this case. Plaintiff claims Great Lakes unreasonably delayed his claim, but notably, Plaintiff did not wait to file his lawsuit until Great Lakes made its determination, instead filing his state petition within days after his EUO was taken. UMF

No. 37; *compare* Ex. 1, *with* Pet. (Dkt. # 1-2). However, he waited to serve Great Lakes until *after* Great Lakes issued its determination. Notice of Removal (Dkt. # 1), at ¶ 2; State Docket (Dkt. # 1-1). Irrespectively, the "critical question" on this issue is whether Great Lakes "had a good faith belief" during the claims process, *Beers v. Hillory*, 2010 OK CIV APP 99, ¶ 24, 241 P.3d 285, 292 (quoting *Ball v. Wilshire Ins. Co*., 2009 OK 38, ¶ 22, 221 P.3d 717, 725), that it had "some justifiable reason for the actions it took or omitted", *id.* (quoting *Badillo v. Mid Century Ins. Co*., 2005 OK 48, ¶ 28, 121 P.3d 1080, 1093–94)), which includes "a justifiable reason for withholding or delaying payment under the policy." *Ball*, 221 P.3d at ¶ 22 (quoting *Newport v. USAA*, 2000 OK 59, ¶ 10, 11 P.3d 190, 195). Here, the "evidentiary materials of record . . . demonstrate[] the factual and legal reasons for [Great Lakes'] conduct" during the claims process. *Beers*, 241 P.3d at ¶¶ 24- 25; UMF Nos. 1-38.

From the outset, the circumstances regarding the March 2020 fire and the lack of smoke detectors or fire extinguishers at the Property raised issues for Great Lakes regarding "coverage concerning some or all of the damages." ROR Letter, Ex. 16; UMF Nos. 23-37. There were multiple inspections of the Property by both independent adjusters as well as forensic engineers. There were several interviews with first responders, arson investigators, and the Fire Marshal, who all also confirmed (both in interviews and in their reports) that no smoke alarms or fire extinguishers were present inside the Property at the time of the fire. UMF Nos. 26-36. During the entire claims process, Great Lakes communicated its concerns with Plaintiff and his counsel regarding coverage and the ongoing steps of the claims investigation. Exs. 14-24. Due to the concerns regarding coverage under terms of

the PSE, Great Lakes then engaged counsel to take the Plaintiff's EUO, and during that EUO, Plaintiff confirmed that he had removed the protective safeguards from the Property prior to the March 2020 fire. UMF Nos. 29-36. These facts show that Great Lakes' coverage concerns about Plaintiff's claim "were legitimate," *Beers*, 241 P.3d at ¶ 26, and that at all times during the claims process, Great Lakes had "a reasonable belief that [Plaintiff's] claim [was] legally or factually insufficient." *Klintworth v. Valley Forge Ins. Co.*, 2021 WL 816730, at * 14 (N.D. Okla. Mar. 3, 2021), *aff'd*, 2022 WL 1021750 (10th Cir. Jan. 31, 2022) (quoting *Buzzard v. Farmers Ins. Co.*, 1991 OK 127, 824 P.2d 1105, 1109). Great Lakes acted reasonably considering the circumstances surrounding Plaintiff's claim and the fire at issue. *Beers*, 241 P.3d at ¶ 26. There is no evidence "suggesting [Great Lakes] intentionally delayed payment during this period for an improper purpose", *id.*, and "the only conclusion that a reasonable jury could make is [Great Lakes'] investigation of [Plaintiff's] claim was in good faith." *Klintworth*, 2022 WL 1021750 at *11.  Where, as in this case, "an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law", *Klintworth*, 2021 WL 816730, at * 14 (quoting *Beers*, 241 P.3d at ¶ 26), and summary judgment should thus be granted on Plaintiff's bad faith claim against Great Lakes. *Beers*, 241 P.3d at ¶ 26; *see also Clark*, 2022 WL 2717618, at * 7 (citing *Oulds*, 6 F.3d at 1436).

## CONCLUSION

For the reasons stated herein and as demonstrated in the evidentiary materials hereto, no coverage existed under the Policy for Plaintiff's loss claim from the March 2020 fire, and Plaintiff cannot establish any material facts to demonstrate otherwise. As such,

there is evidence lacking to support each critical element of Plaintiff's claims against Great Lakes, rendering summary judgment appropriate. The Court should therefore summarily adjudicate all of Plaintiff's claims in Great Lakes' favor and grant it such other and further relief to which it has shown itself entitled.

Respectfully submitted,

*/s/ Sara E. Potts*
Doerner Saunders Daniel
& Anderson, LLP
Sara E. Potts, OBA No. 32104
Emily E. Allan, OBA No. 33456
210 Park Avenue, Suite 1200
Oklahoma City, OK 73102
T: (405) 898-8654 | F: (405) 898-8684
Email: spotts@dsda.com
eallan@dsda.com
-and-
Michael Linscott, OBA No. 17266
Two West Second Street, Suite 700
Tulsa, OK  74103-3117
T: (918) 591-5288 | F: (918) 925-5288
Email:  mlinscott@dsda.com
***Attorneys for Defendant Great Lakes Insurance SE***

## CERTIFICATE OF SERVICE

This certifies that on September 1, 2022, a true and correct copy of the foregoing document was served via the Court's electronic notification system to the following counsel of record:

Scott R. Jackson
Scott R. Jackson
Martin Jean & Jackson
P.O. Box 2403
Ponca City, Oklahoma 74602
sjackson@mjjlawfirm.com
**Attorneys for Plaintiff**

*/s/ Sara E. Potts*

6112761.1