## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| (1) | JOSHUA FIELDS | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| | | ) | |
| v. | | ) | Case No. CIV-21-986-G |
| | | ) | |
| (1) | GREAT LAKES INSURANCE SE, | ) | Removed from the District Court of |
| (2) | MJ KELLY COMPANY, and | ) | Kay County, State of Oklahoma |
| (3) | CAPSTONE ISG, | ) | Case No. CJ-2021-00037 |
| | | ) | |
| | Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT GREAT LAKES INSURANCE SE'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

In response to Defendant Great Lakes Insurance SE's Motion for Summary Judgment, Plaintiff objects to the motion because a reasonable interpretation of the policy endorsement at issue demonstrates Plaintiff did not violate any condition precedent for coverage to apply to his fire loss claim. To suggest he did, this Court would have to ignore or give zero meaning to policy language "***as required by local code***" that described what protective safeguard devices were required to be maintained under the endorsement.

Alternatively, the descriptive policy language "***as required by local code***" is ambiguous and therefore should be construed against the insurer and in favor of the insured to afford coverage. For these reasons, Defendant is not entitled to judgment as a matter of law. Plaintiff submits the following supportive brief for the Court's consideration.

### INTRODUCTION

Plaintiff Joshua Fields ("Fields") is the owner of an eight-unit apartment building ("Property") located at 410 W. Cleveland in Ponca City, Oklahoma. He took out a commercial property insurance policy ("Policy") issued by Defendant Great Lakes Insurance SE ("Great

Lakes") insuring the Property against fire loss with coverage limits of $325,450.00. (See Great Lakes Declaration Pages, attached Exhibit No. 1). The Policy was in effect from May 3, 2019 to May 3, 2020.

In early 2020, Fields decided to remodel the Property. Tenants were vacated over the next few weeks in anticipation of the remodel work. By February of 2020, the Property was vacant and remodeling work started. Unfortunately, a fire broke out at the Property around 11:30 p.m. on March 24, 2020. The Property was severely damaged and determined a total loss.

Fields reported the fire to his local insurance agent on March 26, 2020 and simultaneously filed a claim with Great Lakes. Great Lakes first inspected the Property on April 1, 2020. Twenty (20) months would go by before Great Lakes decided to deny coverage for the claim. It alleged Fields did not satisfy a condition for coverage under the Policy's Protective Safeguard Endorsement ("PSE").[1]

The PSE added as a condition to the commercial property coverage that an insured was "required to maintain the protective devices or services listed in the Schedule above". (See the Protective Safeguard Endorsement, attached Exhibit No. 2). The PSE schedule listed as devices "[F]ully-functioning Smoke Detectors and Fire Extinguishers *as required by local code*". (Emphasis Added).

In March of 2020, the City of Ponca City had adopted the 2015 version of the International Building Code ("IBC") and International Fire Code ("IFC"). For purposes of the IFC, Field's apartment unit was classified as residential group R-2 property. According to the relevant IFC provisions, a Group R-2 building would maintain single or multiple smoke alarms, and fire

---

[1] Great Lakes also claimed coverage was excluded under a different section of the PSE. However, the basis for excluding coverage fails if it is determined Fields met the PSE condition for coverage . For that reason, Plaintiff has focused his response on the reasons why Great West's allegation of an unfilled coverage condition is without merit.

extinguishers, at specific location within the building. However, the IFC limited the application of its codes as follows:

> **"[N]othing herein shall derogate from the authority of the fire code official to determine compliance with codes or standards for those activities or installations within the fire code official's jurisdiction or responsibility".**

(See 2015 IFC, Ch. 1, Sec. 102.8, attached as Exhibit No. 3). Pursuant to the IFC, a fire code official is defined as the fire chief or other designated authority charged with the administration and enforcement of the code, or a duly authorized representative. (See 2015 IFC, Ch. 2, Sec. 202 – General Definitions, attached Exhibit No. 4). Notwithstanding the written provisions of the IFC, the Code expressly placed the final interpretation and enforcement of code provisions with local representatives.

Great Lakes knew this and reached out to the acting Ponca City Fire Marshall, Mr. Dereck Cassady, for his determination on whether the absence of smoke detectors and fire extinguishers at the Property was a code violation. Mr. Cassady informed Great Lakes that it was not a code violation because the building was vacant and undergoing remodeling. (See Great Lakes July 7, 2021 Denial Letter, pg. 5, attached as Exhibit No. 6).

Despite this information, Great Lakes chose to interpret its Policy language to require Fields to maintain smoke detectors and fire extinguishers at the Property regardless of local code interpretation or enforcement. This was a deliberate effort to change the Policy by ignoring express language to the betterment of Great Lakes and detriment of its insured.

Great Lakes had determined within less than a month after its first inspection of the Property that its exposure on Fields' claim was the coverage limits of $325,450.00 and an additional $25,000.00 in debris removal expenses. (See Capstone ISG's April 28, 2020 First

Report, pgs. 6-7, attached as Exhibit No. 5). Its decision to deny the claim twenty (20) months

saved it $350,450.00.

### RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Plaintiff admits that Keith Crawford lived at the Property and took care of everything at the Property at Plaintiff's request.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Denied as stated. The supporting EUO testimony states Plaintiff "got the Policy" through an agent. This does not indicate Plaintiff actually received a copy of the Policy directly from his agent. Further, the EUO testimony states Plaintiff "got the Policy" from an agent different that Kevin Randall and that Mr. Randall never explained the terms of the Policy to him.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.    Admitted.

18.    Admitted.

19.    Denied. Pursuant to the PSE, Plaintiff was required to maintain fully-functioning smoke detectors and fire extinguishers *as required by local code*.

20.    Admitted.

21.    Admitted.

22.    Admitted.

23.    Admitted.

24.    Admitted.

25.    Admitted.

26.    Admitted.

27.    Plaintiff admits Rimkus issued a report with the stated conclusions written in its report.

28.    Admitted.

29.    Admitted.

30.    Denied, as stated.

31.    Denied, as stated.

32.    Previously admitted.

33.    Admitted.

34.    Denied. Defendant misrepresents the language of the Request for Admission submitted to Plaintiff, as seen in its Exhibit No. 25, and misrepresents Plaintiff's response to the discovery request. Plaintiff admitted his was required to notify Great Lakes if he knew of any suspension or impairment in any protective safeguards listed in the Schedule of the Policy

endorsement. Plaintiff did not know of any such suspension or impairments because smoke detectors and fire extinguishers were required as to local code at the time of the fire.

35.     Denied. The Ponca City Fire Marshall, Dereck Cassady, determined and gave notice to Great Lakes in its investigation of the claim that the city would not require the existence of smoke detectors or fire extinguishers at the time of the fire because the Property was being remodeled. Pursuant to the International Fire Code, the city's fire code official has the ultimate authority to "determine compliance with codes or standards for those activities or installations within the fire code official's jurisdiction or responsibility.

36.     Plaintiff admits Great Lakes issued a letter denying him the coverage he paid for under the Policy.

37.     Admitted. Plaintiff filed his lawsuit against Great Lakes, in part, because he had to file the action within one (1) year of the loss date or possibly lose any rights to recover benefits under the Policy pursuant to Oklahoma's applicable statue of limitations. Plaintiff further delayed service of his lawsuit on Great Lakes because Great Lakes had still not made its decision on whether it would provide coverage for Plaintiff's loss. Had Great Lakes performed a timelier investigation and issued a timelier denial of coverage, Plaintiff would have had Great Lakes served sooner than it was.

38.     Admitted.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN PRECLUDING SUMMARY JUDGMENT**

1.     Great Lakes expressly qualified the protective devices considered under its PSE to devices *"as required by local code"*. (See the Protective Safeguard Endorsement, attached Exhibit No. 2).

2.      The IFC expressly states that jurisdictions adopting the code retain final authority to interpret and enforce the IFC provisions within its own jurisdiction. (See 2015 IFC, Ch. 1, Sec. 102.8, attached as Exhibit No. 3).

3.      Great Lakes recognized the importance of determining how local code officials in Ponca City would have interpreted and enforced the IFC code relevant to the Property at the time of the fire. If it didn't, it wouldn't have requested the Ponca City Fire Marshall's determination on code compliance.  (See Great Lakes July 7, 2021 Denial Letter, pg. 5, attached as Exhibit No. 6).

4.      Great Lakes knew from its investigation that Ponca City local code did not require Fields to maintain smoke detectors and fire extinguishers on the Property at the time of the fire. (See Great Lakes July 7, 2021 Denial Letter, pg. 5, attached as Exhibit No. 6).

**ARGUMENT AND AUTHORITIES**

I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to

the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998). (internal citations and quotations omitted).

II. CONSTRUCTION OF AN INSURANCE CONTRACT

The construction of an insurance contract is a question of law and has been summarized by the Tenth Circuit as follows:

> In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 1996 OK 28, 912 P.2d 861, 869 (Okla.1996) (footnotes omitted). In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others. Okla. Stat. Ann. tit. 15, § 157.

*Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 740 (10th Cir. 2004).

If an insurance contract is found to be ambiguous, a court may refer to extrinsic evidence for interpretive assistance. *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767 (10th Cir. 199). A court should also construe ambiguous language against the insurer. *Liberty Mut. Ins. Co. v. East Cent. Okla. Elec. Co-op*, 97 F.3d 383, 388 (10th Cir. 1996). If a court finds language is ambiguous or limiting language is hidden in a policy's provisions, the insurance contract should be interpreted "consistent with the reasonable expectations of a person in the position of the insured". *Am. Economy Ins. Co. v. Rutledge*, 833 F.Supp. 2d 1320, 1322 (W.D. Okla. 2011), citing *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 1996 OK 28, 912 P.2d 861, 869 (Okla. 1996).

"Under the reasonable expectation doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy."

*Spears v. Shelter Mut. Ins. Co.*, 2003 OK 66, 73 P.3d 865, 868 (Okla. 2003).

III. THE PSE'S LANGUAGE "*AS REQUIRED BY LOCAL CODE*" INCORPORATED PONCA CITY'S AUTHORITY TO INTERPRET AND ENFORCE THE RELEVANT IFC PROVISIONS WHEN DETERMINING WHAT PROTECTIVE DEVICES WERE AND WERE NOT REQUIRED TO BE MAINTAINED UNDER THE POLICY.

As noted in Paragraph II, the interpretation of an insurance contract should be construed by giving meaning to all its terms. Great Lakes desires an interpretation that specifically ignores language that requires a determination of how IFC provisions are ultimately interpreted and enforced in a given jurisdiction. If Great Lakes wanted to avoid the application of the IFC and all its provisions, it could have written the PSE in varying formats. For example, Great Lakes could have described the protective devices as simply "Fully-functioning smoke detectors and fire extinguishers". By eliminating the descriptive language "*as required by local code*", Great Lakes could have removed any doubt on when certain jurisdictions required these protective devices or not, and even if certain jurisdictions required them at all.

Other protective safeguard endorsements have been written with more specificity to avoid further interpretation of what is and is not truly required. In *Great Lakes Reinsurance (UK), PLC v. JDCA, LLC*, 2014 U.S. Dist. LEXIS 163863, 2014 WL 6633039, the policy language at issue involved a protective safeguard endorsement that required an insured building to have an automatic sprinkler system as a protective device. The existence of the system was not conditioned on whether the local jurisdiction required it as part of its code enforcement. The endorsement simply required it without qualifications. The Court found that the endorsement requiring the existence of

an automatic sprinkler system, which was defined within the policy, was clear and unambiguous, and that it required the existence of the system as a condition to coverage.

In fact, Great Lakes cites to several cases in its brief on page 22 claiming these cases all interpreted as unambiguous protective safeguard endorsement language similar to the language in Great Lakes' PSE. However, a reading of all these cases reveals none of them included qualifying language describing protective devices "*as required by local code*". All of these cases involved policy language that described maintaining protective devices with specificity such as an "automatic sprinkler system" (*Berenato*), "local burglar alarm fire alarm" or "automatic sprinkler system" and "automatic fire alarm" (*New Hamilton Liquor Store, Inc.*), and "sprinkler system" (*Schwartz & Schwartz of Virginia, LLC*). These cases ironically demonstrate that the inclusion of "*as required by local code*" gave further interpretation to what actual protective devices would have to be maintained in order for coverage to exist under the Policy.

The reason this policy language should be given meaning and not ignored can be illustrated in a rationale hypothetical. Suppose Fields had reviewed the Policy and the PSE before his remodeling work had begun. He would have read that he was required to maintain full-functioning smoke detectors and fire extinguishers "*as required by local code*". How would he know what smoke detectors and fire extinguishers were required by local code in his circumstance? Assuming Fields contacted Ponca City officials, he would have been told what Fire Marshall Cassady told Great Lakes when they asked the same questions – Fields would not have been required to maintain smoke detectors and fire extinguishers on the Property while it was being remodeled. (See Great Lakes July 7, 2021 Denial Letter, pg. 5, attached as Exhibit No. 6).

Fields respectfully argues that a reasonable and plain reading of the PSE language requiring him to maintain smoke detectors and fire extinguishers "*as required by local code*"

should be given the meaning that the City of Ponca City said it meant – no local code required such maintenance. Alternatively, Fields would argue that the qualifying language is ambiguous and therefore interpreted under Oklahoma's reasonable expectation doctrine which requires an interpretation supporting what a reasonable person in Fields' position would have understood the Policy to mean.

IV.  THE PSE'S EXCLUSION SECTION IS IRRELEVANT IF LOCAL CODE DID NOT REQUIRE FIELDS TO MAINTAIN SMOKE DETECTORS AND FIRE EXTINGUISHERS IN THE PROPERTY.

If the listed protective safeguards in the PSE did not include smoke detectors and fire extinguishers because local code did not require them, then Fields could not have known of any suspension or impairment in any protective safeguard listed in the PSE's schedule. Thus, the exclusionary section found in the PSE does not apply to exclude coverage that is extended under the Policy.

V.  PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE TO SUPPORT HIS CLAIM THAT GREAT LAKES BREACHED ITS DUTY OF GOOD FAITH AND FAIR DEALING.

An insurer owes a duty to its insured not to unreasonably withhold payment of claims. *Buzzard v. Farmers Ins. Co., Inc.*, 1991 OK 127, 824 P.2d 1105, 1108-09 (Okla. 1991). A bad faith claim is premised on an insurer's unreasonable, bad faith conduct, that can include unjustified withholding of payment or delay in making such payment. *Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1255 (10th Cir. 2010). An insured can demonstrate an act of bad faith by presenting evidence that an insurer denied a claim for illegitimate reason, failed to treat an insured fairly, or inadequately investigated a claim. See *Bannister v. State Farm Mut. Auto Ins. Co.*, 692 F.3d 1117,

1128-32 (10th Cir. 2012); *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993); *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989).

In this case, Great Lakes acted in bad faith by unreasonably investigating Field's claim for more than twenty (20) months only to deny it based on information it had within days of opening the claim. On April 6, 2020, the claims handler, Kevin Wilson, noted in the claim file that the Property inspection performed by Rimkus found no smoke detectors or fire extinguishers in the Property. (See Claim File Notes, 4/6/2020, attached as Exhibit No. 7). Great Lakes was familiar with its own PSE and its intended maintenance requirements. Great Lakes did not need twenty (20) months to reasonably confirm local code requirements and whether or not Fields had complied with the local code. These facts create a genuine issue of material fact as to the timeliness of Great Lakes investigation of coverage under the Policy.

Great Lakes also acted in bad faith when it intentionally ignored information from the City of Ponca City as to its interpretation and enforcement of code provisions relevant to the PSE provisions. It is undisputed and documented in Great Lakes' claims file that it knew local code officials would not have required Fields to maintain protective devices in the Property at the time of the fire. The lack of local code requirements for such protective devices was significant in the interpretation of the PSE, as more fully discussed herein. Great Lakes ignored that information to arrive at a decision that Fields was obligated under the PSE to maintain smoke detectors and fire extinguishers as a condition for coverage notwithstanding whether local code would have required the same under the circumstances. This was an unreasonable interpretation of its Policy and an unfair position to take in order to deny payment to Fields.

Great Lakes' significant delay in determining coverage, refusal to consider how local code officials interpreted and enforced the IFC provisions specific to the Property, and final denial of

coverage collectively support a claim that Great Lakes acted in bad faith. For this reason, Great

Lakes is not entitled to summary judgment on Field's claims for bad faith.

<u>**CONCLUSION**</u>

For the facts and arguments presented in this brief, Plaintiff respectfully asks this Court to

overrule Defendant's Motion for Summary Judgment and grant whatever relief this Court deems

just and proper.

Respectfully submitted,

MARTIN JEAN & JACKSON

By:    <u>s/ Scott R. Jackson</u>
       Scott R. Jackson, OBA #17502
       P.O. Drawer 2403
       Ponca City, OK 74602
       Phone (580) 765-9967
       Fax (580) 765-5433
       sjackson@mjjlawfirm.com
       Attorney for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 7th day of October 2022, I electronically transmitted the attached
document to the Clerk of the Court using the ECF System for filing. Based on the records currently
on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF
registrants, via email:

Doerner, Saunders, Daniel & Anderson, LLP
Sara E. Potts, OBA #32104
Emily E. Allen, OBA #33456
Michael Linscott, OBA #17266
spotts@dsda.com
eallan@dsda.com
mlinscott@dsda.com
*Attorneys for Defendants*
*Great Lakes Insurance SE*

<u>s/ Scott R. Jackson</u>
Scott R. Jackson